```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION


Nicole Y. Stillion,            :

     Plaintiff,                 :

   v.                           :     Case No. 2:14-cv-0017

                                :     JUDGE PETER C. ECONOMUS
Commissioner of Social Security,      Magistrate Judge Kemp

     Defendant.                 :
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Nicole Y. Stillion, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on December 14, 2009, and alleged that Plaintiff became disabled on January 5, 2009.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on May 9, 2012.  A second hearing was held on July 27, 2012.  In a decision dated September 20, 2012, the ALJ denied benefits.  That became the Commissioner's final decision on November 19, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on March 10, 2014.  Plaintiff filed her statement of specific errors on April 9, 2014, to which the Commissioner responded on July 11, 2014.  Plaintiff filed a reply on July 16, 2014, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 36 years old at the time of the

administrative hearing and who has an associate's degree in administrative office assistant, testified as follows.  Her testimony appears at pages 43-61 of the administrative record.

Plaintiff had, in the past, worked as a merchandiser, dealing with Canon printers and also with pharmaceuticals.  Those jobs required standing and lifting up to 20 pounds.  She had also been a receptionist in a drug and alcohol clinic.  That was essentially a sedentary job.  She had been a bank teller as well.

The worst impairment Plaintiff suffered from was rheumatoid arthritis.  She experienced morning stiffness, swelling, and joint pain, primarily in her wrists, fingers, knees, and ankles.  Plaintiff had osteoarthritis in her upper back and degenerative arthritis in her lower back.  Prolonged sitting and standing increased her pain.  She had also been diagnosed with fibromyalgia and had a condition which caused headaches several times per week.  She was fatigued due to sleep apnea.  She received an infusion of iron for anemia every other month, from which it took several days to recover.

Around the house, Plaintiff was able to do some chores, but needed to break them up.  She did laundry on a daily basis and did most of the vacuuming.  Most of her days were spent sitting and resting.  Her rheumatoid arthritis flared up several times per month for two or three days at a time.  She did not have the energy to work eight hours a day, five days a week.

### III.  The Medical Records

The medical records in this case are found beginning on page 315 of the administrative record.  The pertinent records - those relied upon by Plaintiff in support of her statement of errors - can be summarized as follows.

On July 11, 2005, Plaintiff underwent surgery for treatment of a Chiari I malformation, which had been causing severe bifrontal headaches and left-sided numbness.  The surgery

-2-

consisted of decompression as well as a laminectomy at C1. She was discharged in stable condition. One month after the surgery, she was reporting no improvement in her headaches. (Tr. 317-35). However, by September 28, 2005, she had "returned to normal." (Tr. 540).

Dr. Stainbrook, who treated Plaintiff for rheumatoid arthritis, wrote a letter on March 18, 2009 summarizing her medical conditions. At that time, she was status post-surgery for the Arnold-Chiari malformation and suffered from elevated c-reactive protein, positive rheumatoid factor, costocondritis, osteoarthritis of the feet, bilateral anserine bursitis, fibromyalgia syndrome, left heel spur, L5 pseudoarticulation with the sacrum to the left, rudimentary ribs T12, degenerative disc disease/osteoarthritis of the lumbar spine, thoracic muscle pain, and rheumatoid arthritis. His only comment about her current condition, however, was that she "feels ok." (Tr. 359). Two months before, she was complaining of "joint pain and aching all over." She was employed at that time but had had aching since 2005. His impression was severe pain and fatigue, and he believed she would benefit from chronic pain management as well as psychiatric evaluation. (Tr. 360-61). He continued to see her into 2010, and did not change his basic diagnoses. A note dated January 13, 2010, indicates that he had prescribed Methotrexate, and that Plaintiff had "decline[d] a stronger pain pill." (Tr. 480). Another note dated September 20, 2010 said that Plaintiff was "not real good" and suffering from low back pain and overall achiness. At that time, she was still taking Methotrexate and had added over-the-counter Tylenol. (Tr. 642). In a note dated February 17, 2011, she was again described as "ok." (Tr. 653).

Dr. Weaver performed a consultative physical examination on August 12, 2010. Plaintiff had stopped working about a month

before.  She reported constant dull achy pain and stiffness in her lower back, wrists, knees, and ankles, and also some pain and stiffness in her hands and hips.  Cold and damp weather made it worse.  She walked with a stiffened gait.  She demonstrated multiple trigger points bilaterally and her range of motion was restricted by pain.  Dr. Weaver gave a provisional diagnosis of probable chronic low back and multiple joint pains, rheumatoid arthritis and fibromyalgia syndrome, degenerative disc disease, osteoarthritis of the lumbar spine, and L5 pseudoarticulation with sacrum on left by history.  He thought that due to these impairments and her obesity, Plaintiff would have problems with sustained sitting, standing, and walking as well as with repetitive lifting.  However, she could do occasional light lifting and carrying, handling objects, hearing, speaking, following directions, and travel.  (Tr. 591-95).

    Dr. Congbalay, a state agency reviewer, completed a residual functional capacity form on August 25, 2010.  She said that Plaintiff could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and could work at the light exertional level.  She also made the comment that Plaintiff's report of symptoms was consistent with the impairments from which she suffered.  (Tr. 620-27).  Another state agency reviewer, Dr. Binns, confirmed that evaluation. (Tr. 644).

    Dr. Stainbrook had referred Plaintiff for evaluation and care of her back pain.  On October 21, 2010, Dr. Henry reported that Plaintiff had constant aching and stabbing pain radiating into her hips.  Activity made it worse, and rest made it better. She did not report any joint pain, swelling, or stiffness.  She stood and walked normally but had some tenderness in the lumbosacral spine area.  Dr. Henry's assessment was chronic facetogenic low back pain and fibromyalgia.  (Tr. 649-51).   In a follow-up referral letter written by Dr. Henry to Dr. Stainbrook

on November 23, 2010, Dr. Henry commented that Plaintiff was getting relief from bilateral facet joint injections and that her pain level was 4/10 with medications. She described sleep disturbance due to pain, however. (Tr. 647-48).

In 2011, Plaintiff was diagnosed with obstructive sleep apnea. She had a "semi-successful" trial with a C-PAP machine and she was encouraged to use it "all night, every night." Her apnea was described as "mild-moderate." (Tr. 661).

Dr. Stainbrook completed a physical capacity evaluation form on October 20, 2011. He thought that Plaintiff could stand and walk for four hours in a work day, up to 20 minutes at a time, and sit for six hours, up to 90 minutes at a time. She could lift up to ten pounds occasionally. The only thing she could never do was climb ladders. However, she could only rarely extend her hands and arms and could only occasionally grasp and finger with both hands. He based his conclusions on his diagnosis of rheumatoid arthritis. (Tr. 813-16). Dr. Kalchik also filled out such a form, limiting Plaintiff to sitting, standing, or walking for only 15 minutes at a time. He said that she could perform repetitive grasping, however. (Tr. 817-19). Both doctors agreed that Plaintiff would be likely to miss all or part of a work day five or more times per month.

### IV. The Vocational Testimony

George W. Coleman III was the first vocational expert in this case. His testimony begins on page 62 of the administrative record.

Mr. Coleman testified that Plaintiff's position as a merchandiser was unskilled and light. The receptionist position was semi-skilled and light, and the bank teller job was skilled and light.

Mr. Coleman was then asked some questions about a hypothetical person who had Plaintiff's educational and work

-5-

history and who could work at the light exertional level. That person also could not climb ladders, ropes or scaffolds, but could climb ramps or stairs occasionally and could also occasionally stoop, kneel, crouch, and crawl. According to Mr. Coleman, those limitations would not preclude her doing any of the Plaintiff's past work. However, if the person also had to miss five days of work per month, no jobs could be done. The same was true if the person were off task several times per week for four or five hours at a time.

    Following the first hearing, Plaintiff's counsel pointed out some inconsistencies between Mr. Coleman's testimony and the <u>Dictionary of Occupational Titles</u>. As a result, a second hearing was held where a different vocational expert, William Kiger, testified. His testimony can be found at pages 31 through 37 of the record.

    Mr. Kiger's testimony differed from Mr. Coleman's in several ways. He described the receptionist job as sedentary rather than light and he did not consider the merchandiser job at all. He was given the same hypothetical question that the ALJ posed to Mr. Coleman, and confirmed that someone with those limitations could do both the bank teller and receptionist jobs. He also agreed that someone who would miss five days of work per month could not be gainfully employed. Responding to a new hypothetical which described a person who could work only at the sedentary level and who could rarely perform bilateral reaching and could only occasionally perform bilateral fingering and handling, Mr. Kiger testified that only the job of surveillance system monitor, with 15,000 positions available nationally, could be performed. Finally, he testified that someone who could stand and walk for 20 minutes at a time up to four total hours in a work day, could sit for 90 minutes at a time for up to six hours in a work day, and who could occasionally lift up to ten pounds,

bend, squat, crawl, and climb steps, could do some sedentary jobs such as order clerk, production worker and inspector, tester, or sorter.

## V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 79-87 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status of the Social Security Act through March 31, 2010. Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of January 5, 2009. Next, the ALJ determined that Plaintiff had severe impairments including degenerative disc disease, chiari I malformation, costochondritis, obesity, bursitis, left heel spur, tendonitis, epidcondylitis, arthritis, and osteoarthritis. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level except that she could not climb ladders, ropes, or scaffolds, and could only occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. The ALJ found that, with these restrictions, Plaintiff could perform her past relevant work as a bank teller and receptionist. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

## VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these issues; (1) the ALJ did not provide good reasons for assigning little weight to either treating physician's opinions; (2) the ALJ did not properly evaluate Plaintiff's credibility; and (3)

the ALJ failed to evaluate fully the effects of obesity on Plaintiff's functional abilities. The Court analyzes these claims under the following standard.

    <u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

                  A.   <u>Treating Physician Opinions</u>

    In her first statement of error, Plaintiff argues that the ALJ's reasoning in support of his decision not to afford controlling weight to the opinions of Drs. Stainbrook and Kalchik was insufficient to allow for meaningful judicial review.  She

combines that with an argument that the reasons given by the ALJ were insufficient to justify his disregard of the treating physicians' opinions and are not supported by substantial evidence in the record.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ said this about Dr. Stainbrook's and Dr. Kalchik's opinions:

> In considering these two opinions, which are somewhat similar in their conclusion, I afford them little weight.  Reasons for reaching this conclusion include the fact that because the record fails to demonstrate that either of these opineing [sic]

-9-

> physician's [sic] are familiar with Social
> Security's occupational standards. In addition, other
> evidence of record does not provide support for these
> assessed limitations. Lastly, the opinions appear to be
> highly dependent upon the claimant's reports of
> symptoms and limitations where the claimant is found to
> not be wholly reliable as a reporter of symptoms and
> limitations, and are also inconsistent with the
> credible portion of evidence addressing activities of
> daily living.

(Tr. 85).  The ALJ afforded the greatest weight to the opinions of the state agency reviewers, citing particularly to Exhibits 5F, 17F, 20F, 21F, and 22F - although Exhibit 5F is an opinion from Dr. McCloud that Plaintiff had no severe impairments, which the ALJ clearly did not agree with - but, even as to those, the ALJ made the somewhat curious statement that the weight assigned to these opinions was "great" to the extent that they agreed with the ALJ's residual functional capacity assessment, and "little" to the extent they did not.  (Tr. 86).  The ALJ justified that latter decision on the ground that there was new evidence submitted after the opinions were rendered, but did not explain how any of that new evidence actually influenced the ALJ's findings to the extent that they differed from the state agency reviewers'.  In fact, the ALJ's physical residual functional capacity finding seems to track exactly the views expressed by Dr. Congbalay and affirmed by Dr. Binns, both of which predated some of the medical evidence, including the residual functional capacity findings of Drs. Stainbrook and Kalchik.

   The Commissioner defends the ALJ's decision to afford little weight to the treating physicians' opinions by arguing that those doctors' reliance on Plaintiff's report of her symptoms was problematic given her lack of credibility (a reason cited by the ALJ) and that the record as a whole did not support their opinions.  The Commissioner also faults Plaintiff for not citing to any records which do support their opinions.  Finally, the

-10-

Commissioner argues that any error in this regard was harmless because Mr. Kiger was given a hypothetical which incorporated the restrictions found by Drs. Stainbrook and Kalchik, and he testified that all of the restrictions except the one relating to absences were consistent with performing substantial gainful employment.

Taking this last argument first, the ALJ did not make an alternative finding about Plaintiff's being able to perform any jobs other than her past employment. The evidence is in conflict as to whether other jobs exist which someone who was as limited as Drs. Stainbrook and Kalchik believed, except for the restriction on attending work, could do other jobs. Mr. Kiger testified that such a person could do some sedentary jobs; Mr. Coleman testified that if a person was constantly changing positions - which would be required of someone who could only sit, stand, or walk for fifteen minutes at a time - that person could probably not work "because sedentary jobs usually require some prolonged period of sitting and light jobs require some prolonged period of standing and walking." (Tr. 68). Since the ALJ did not consider the issue and made no effort to resolve this conflict in the testimony, the Court should not attempt to do so, and it cannot characterize any error concerning the treating source opinions as harmless.

As to the balance of the Commissioner's argument, the Court agrees with Plaintiff that the ALJ did not provide an adequate explanation for his decision to give little weight to the treating source opinions. First, the ALJ's general reference to a conflict between the treating source opinions and "other evidence of record" is simply too vague to permit meaningful review. As this Court has said, a "generalized reference to the 'medical record of evidence,' without any explanation of what portions of that record are being relied on, [is] simply insufficient." <u>Dexter v. Commissioner of Social Security</u>, 2014

-11-

WL 4467666, *5 (S.D. Ohio Sept. 9, 2014). To the extent that the conflict was between the treating source opinions and the later-cited opinions of the state agency reviewers, the Court of Appeals has observed that "[n]othing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion." Hensley v. Astrue, 573 F.3d 263, 267 (6th Cir. 2009).

The second reason offered by the ALJ was that the treating sources may not have been familiar with social security law. But the opinions at issue are not opinions as to disability; they are opinions about Plaintiff's ability to perform certain physical activities. The regulations make clear that these are "medical opinions" rather than legal ones. See 20 C.F.R. §404.1513. Some courts have noted that an "ALJ's observation that [a treating source] was not familiar with Social Security rules and regulations is not a legitimate reason to discount [that source's] opinion...." See Swarm v. Colvin, 2014 WL 4656210, *13 (D. Idaho Sept. 16, 2014). Lastly, there is no evidence in the record about the extent to which either Dr. Stainbrook or Dr. Kalchik understood the applicable regulations; any finding on this issue is pure speculation. Consequently, this reason is also an inadequate basis for rejection of the treating source opinions.

The only other basis which the ALJ offered for his decision is his view that both doctors based their opinions on Plaintiff's self-report of symptoms, and, according the ALJ, she was not entirely credible. Leaving aside for the moment whether that finding was properly supported, as Plaintiff notes in her reply, both physicians administered numerous tests and had a longitudinal treating relationship with Plaintiff which put them in the best position to evaluate how her impairments affected her

ability to function.  Nothing suggests that either relied solely or even heavily on her self-reports of limitations.  Further, Dr. Weaver (whose opinion is not even discussed in connection with the ALJ's residual functional capacity finding) reached much the same conclusions as did the treating sources concerning Plaintiff's ability to engage in sustained sitting, walking, or standing, and he also performed objective testing and provided objective evidence for his conclusions.  Every physician's opinion is based to some extent on what a patient reports about pain or activity; if every treating source opinion could be discounted solely on the basis that the doctor relied to some extent on what his or her patient said, there would be little left of the "treating physician" rule.  Absent evidence that a treating source opinion is based "to a large extent" on the claimant's report of symptoms which the ALJ has correctly found to be incredible, this rationale cannot sustain the failure to afford significant weight to a treating source opinion.  See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); see also Iding v. Comm'r of Social Security, 2011 WL 1002105, *8 (S.D. Ohio Feb. 22, 2011), adopted and affirmed 2011 WL 1002108 (S.D. Ohio March 16, 2011)(finding such a rationale inadequate where the ALJ's discussion of the issue "is so perfunctory that the Court cannot tell which symptoms the ALJ believed to have been reported incorrectly ...").  For all of these reasons, Plaintiff's first statement of error is meritorious and justifies a remand.

### B. Credibility

Plaintiff also argues that the ALJ did not make a proper credibility finding.  She contends that the ALJ misconstrued her work as a merchandiser as demonstrating that she was more capable than she testified, and that his decision is otherwise so devoid of reasoning as to be essentially unreviewable.  The Commissioner counters that the ALJ provided valid reasons, supported by the

-13-

record as a whole, for deeming Plaintiff less than fully credible.

An ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record.  See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

The ALJ identified "two factors" which, in his view, undercut Plaintiff's testimony about the limitations she encountered on a daily basis.  First, he said that her limited activities "cannot be objectively verified with any degree of certainty."  Second, he said that the medical evidence was sufficiently weak that something other than her medical conditions must be contributing to her limitations.  He also discounted her testimony based on her sporadic work history, which he considered as evidence that her failure to work was not based entirely on medical factors (such as a "lack of interest in working"), and based on the fact that she continued to work after her alleged onset date and did not disclose this fact in one of her application forms.  He found as a fact that the demands of this work, although it was not substantial gainful activity, "demonstrates functional capabilities greater than those described by the claimant in her hearing testimony ...."  (Tr. 84-85).

-14-

To the extent that the ALJ found Plaintiff less than credible based on the perceived weakness of the medical evidence, this factor will have to be reweighed after the treating source opinions are properly evaluated. Further, it is difficult for this Court to determine what part of the medical evidence the ALJ considered to be "weak"; his review of the evidence omits, for example, any reference to the multiple tests for rheumatoid arthritis or to the content of the treatment notes from Dr. Stainbrook and others about her condition. The Court also agrees with Plaintiff that the evidence about her work after 2009, which the ALJ found did not amount to substantial gainful activity, was not necessarily inconsistent with the limitations to which she testified. The merchandiser job required little sustained effort and was performed for only a few hours at a time and for only a few days per month. That is not inconsistent with someone who cannot sustain a full work week or who needs to change positions on a fairly constant basis. The overall flavor of the ALJ's decision on this issue seems to be that someone who has worked only intermittently in the past must not be disabled but, as he said, has no interest in full-time employment. Plaintiff may have been less than credible, but the ALJ needed to engage in a more thorough and specific analysis of the record, properly accounting for and weighing the medical evidence, before coming to that conclusion.

### C. Obesity

Plaintiff's final contention is that the ALJ did not take limitations caused by her obesity into account in determining her residual functional capacity. She bases this argument on the fact that obesity is not mentioned in that portion of the ALJ's decision.

The Commissioner has the better of this argument, however. The record clearly indicates that the ALJ was aware of Plaintiff's obesity. It is also the case that no treating or

examining source identified obesity as a specific factor in how Plaintiff's other impairments affected her functioning. It is likely that the treating sources factored obesity into their overall residual functional capacity assessment, and the ALJ was certainly required to consider whether their assessments were credible in light of all Plaintiff's impairments, including obesity, but there is no separate evidence about functional limitations from obesity that the ALJ completely overlooked. Under these circumstances, the mere omission of the word "obesity" from the ALJ's discussion of Plaintiff's residual functional capacity does not amount to reversible error.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a

-16-

waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
